RAFKIN ESQ., PLLC
SETH A. RAFKIN (199166)
(srafkin@rafkinesq.com)
JENNIFER M. BOGUE (259431)
(JBOGUE@RAFKINESQ.COM)
1201 SUSSEX TURNPIKE, SUITE 102
RANDOLPH, NJ  07869
Telephone:     (973) 891-3370
Facsimile:     (973) 920-9727

Attorneys for PLAINTIFF

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MANDANA MELLANO,

          Plaintiff,

    v.

FALLON GROUP, INC., a Minnesota corporation, PUBLICIS GROUPE S.A., a French corporation, PUBLICIS COMMUNICATIONS, INC., a New York corporation, MICHAEL BUCHNER, an individual, and DOES 1 through 10,

          Defendants.

Case No.  CV 17-5526-JFW (Ex)

**FIRST AMENDED COMPLAINT FOR:**

**(1) BREACH OF CONTRACT;**

**(2) BREACH OF IMPIED COVENANT & FAIR DEALING;**

**(3) FRAUD & DECEIT;**

**(4) NEGLIGENT MISREPRESENTATION;**

**(5) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;**

**(6) FAILURE TO PAY WAGES;**

**(7) WAITING TIME PENALTY;**

**(8) GENDER DISCRIMINATION;**

**(9) RETALIATION**

PLAINTIFF Mandana Mellano hereby asserts as her complaint against DEFENDANT FALLON GROUP, INC. ("DEFENDANT" or "FALLON"), DEFENDANT MICHAEL BUCHNER ("BUCHNER") and DOES 1through 10 as follows:

### JURISDICTION & VENUE

1.      This Court has jurisdiction over this matter and venue is proper in this County because: (a) FALLON and BUCHNER transact business in this County; (b) PLAINTIFF, at all relevant times, was employed by FALLON in this County and resides in this County; (c) DEFENDANTS FALLON and BUCHNER made representations intended to cause PLAINTIFF to take action in this County to her detriment; and (d) the injury and damages complained of herein occurred within this County.  On July 27, 2017, Defendants removed this action from state court to the United States District Court, Central District of California on the basis of diversity jurisdiction.

### PARTIES

2.      PLAINTIFF is an individual residing in this County at all times material hereto. PLAINTIFF is a successful advertising professional.  DEFENDANT FALLON is a corporation incorporated under the laws of the State of Minnesota and has transacted and, at all times relevant hereto, was transacting business in this County.  FALLON is an advertising agency.  FALLON is a wholly owned subsidiary of DEFENDANT PUBLICIS GROUPE, S.A.  PUBLICIS GROUPE, S.A. is multinational advertising and communications corporation organized under the laws of France and doing business in California.  It employs approximately 80,000 people in over 100 countries and has annual revenues of over 10 billion U.S. dollars.  On information and belief, DEFENDANT PUBLICIS COMMUNICATIONS, INC. is one of four intermediate holding and/or operating entities under the PUBLICIS GROUPE, S.A. umbrella, and the intermediate entity that encompasses FALLON.   For purposes of this complaint, PUBLICIS GROUPE, S.A. and PUBLICIS COMMUNICATIONS, INC. are collectively referred to as "PUBLICIS."

3.      FALLON and PUBLICIS are effectively a single employer for purposes of liability to PLAINTIFF because they are an integrated enterprise.   Most importantly, FALLON and PUBLICIS have common control of labor relations.  PUBLICIS made the final decisions regarding her employment, including providing approval to hire PLAINTIFF and approving her salary.

FALLON was required to obtain PUBLICIS approval before terminating PLAINTIFF's employment.  Further, FALLON and PUBLICIS have interrelated operations and common financial control.  PUBLICIS supplies FALLON with legal counsel, human resources support, and other administrative services.  FALLON reports up through PUBLICIS financially. Further, the FALLON bonus pool is set by PUBLICIS and in the years pertinent to this complaint, PUBLICIS entirely dictated FALLON's bonus compensation.   The two companies also have common management.  Among other things, DEFENDANT BUCHNER reports up to Andrew Bruce, CEO of PUBLICIS COMMUNICATIONS.

4.    DEFENDANT BUCHNER is FALLON's Chief Executive Officer.

5.    The true names of DEFENDANTS DOES 1 through 10 are not known at present to PLAINTIFF.  DEFENDANTS DOES 1 through 10 were the agents and/or employees of FALLON and/or PUBLICIS and acted within the course and scope of such agency and/or employment in engaging in the acts complained of herein.  As the true names of such DOES are identified, PLAINTIFF will timely amend the complaint to so state.

**GENERAL ALLEGATIONS**

**DEFENDANTS LURED PLAINTIFF AWAY FROM
A LUCRATIVE JOB THROUGH MISREPRESENTATIONS**

6.    PLAINTIFF Mellano was recruited by DEFENDANTS away from a lucrative partner position with Ogilvy & Mather, a recognized industry leader.  FALLON's Chief Executive Officer DEFENDANT BUCHNER enticed PLAINTIFF to leave Ogilvy by repeatedly promising her in writing and verbally, including but not limited to, on March 8, 2016, that she would lead FALLON's effort to "establish an LA presence."

7.    Several times, including, but not limited to July 5, 2016, August 27, 2015, February 13, 2016 and February 26, 2016, BUCHNER assured PLAINTIFF that she would have the necessary resources at her disposal to put FALLON on the map in Los Angeles and that FALLON recognized that making a meaningful dent in one of the largest advertising markets in the world would take time, resources and commitment.  BUCHNER made these same representations to PLAINTIFF in person in Los Angeles when he flew out to meet with PLAINTIFF to discuss

1  launching an LA presence.  BUCHNER's offer letter to PLAINTIFF purported to welcome her as

2  a member of "our Fallon Family."

3        8.    PLAINTIFF made clear to FALLON and BUCHNER that a successful Los Angeles

4  office would require, among other things, her ability to hire appropriate talent.  She made clear that

5  she would not be interested in taking a job with FALLON without the ability to make such hires

6  and without a commitment by FALLON to give the Los Angeles office sufficient time to become

7  a success.

8        9.    Specifically, BUCHNER repeatedly represented to PLAINTIFF that she would be

9  able to hire appropriate talent for FALLON's Los Angeles office, including making such

10  representation on February 18, 2016 and February 26, 2016.  Indeed, BUCHNER's offer letter to

11  PLAINTIFF emphasized that "evaluation of talent" would be key to a successful launch in Los

12  Angeles.  Further, BUCHNER told her verbally and in the offer letter that he and FALLON wanted

13  her to develop a plan for the first 90-120 days and that "evaluation of talent" would be a key

14  component.

15        10.    FALLON and BUCHNER also promised PLAINTIFF that it would allow her at

16  least two years to build the Los Angeles office into a success.

17        11.    In reality, DEFENDANTS knew that there would be a company-wide hiring freeze

18  in effect that would preclude PLAINTIFF from being able to hire anyone for the Los Angeles office.

19  PLAINTIFF was never permitted to hire anyone.  Immediately upon starting her employment, she

20  was advised that there was a "hiring freeze" in place, something DEFENDANTS were aware of

21  but hid from PLAINTIFF until after she agreed to leave the partnership at Ogilvy and started

22  employment with FALLON.

23        **PLAINTIFF DELIVERED ON HER PERFORMANCE**

24        12.    As she has done throughout her career, PLAINTIFF put her heart into her work for

25  FALLON.  Despite the fact that she did not receive anything like the support and resources

26  promised, including, but not limited to, no support from New Biz or the ability to hire, she provided

27  substantial value to FALLON, including, among other things:

28            a.   Building FALLON's media vision, proposition and positioning in the marketplace.

b.  Developing strong media POVs on industry topics as part of FALLON's approach to media (such as automation, transparency, etc.).

c.  Building FALLON's suite of propriety tools and methods (which did not exist before).

d.  Substantially improving FALLON's competencies by rolling out the SME series and fostering knowledge sharing and modern capabilities such as programmatic media and influencer marketing that are currently being employed by the team.

e.  Introducing and employing Orchestra (Media Mix Modeling) as a core capability backed by a syndicated model.

f.  Codifying FALLON's measurement approach, which is critical to both existing clients and new biz pitches.

g.  Establishing relationship with Publicis Vivaki and gaining FALLON the rights to access all ad tech rates and terms negotiated by the Groupe to better service clients.

h.  Building FALLON's profile through numerous speaking engagements and putting FALLON on key stages such as: Advertising Week, Modern Media Summit, Videonomics, Silicon Beach Fest, OMMA LA and NY; conducting a series of podcasts with key industry publishers.

i.  Strengthening FALLON's relationship with the consultant community resulting in integrated pitch opportunities that FALLON has been invited to early in 2017.

j.  Building FALLON's reputation through engaging with some of the hottest start-ups in areas identified by FALLON as of key strategic value, e.g., tech, lifestyle, fashion, etc.  She lined up a number of opportunities in the pipeline such as Wonder, Onyx Box, Tradesy, Boxed.com, FTD products, Netflix, etc.

k.  Brought in $1.5 million in revenue opportunity for FALLON with a top financial client.

13.  FALLON and BUCHNER recognized PLAINTIFF's strong performance.

**FALLON AND PUBLICIS ABANDONED THEIR COMMITMENT AND FIRED MS. MELLANO A MONTH BEFORE HER BONUS WAS DUE TO REDIRECT RESOURCES TO MALE EXECUTIVES**

14.     On March 3, 2017, BUCHNER informed PLAINTIFF that he was firing her. He took pains to make clear that her performance was not in question. Rather, he explained, he had decided to redirect resources to support PUBLICIS' and FALLON's launch of a New York office led by John King.

15.     As her offer letter makes clear, PLAINTIFF was eligible for an annual bonus based on her individual performance and the agency's overall performance. As noted above, PLAINTIFF's performance was strong and positively viewed by DEFENDANTS. Yet, eleven months into her first year, DEFENDANTS elected to terminate her employment with an effective date of April 3rd, just days prior to when she would otherwise be eligible to receive her annual bonus. FALLON Human Resources made clear that she would not receive her bonus.

16.     In short, PUBLICIS and FALLON simply walked away from its obligations to see its LA commitment to fruition and in the process cast PLAINTIFF aside with no recognition of the havoc its callous abandon would wreak on her professional and personal life. In a telling slip in an email, BUCHNER described PUBLICIS' and FALLON's designs on the LA market as a "gamble that didn't pan out." That may have been his view, but it certainly was not what PLAINTIFF had bargained for and not what DEFENDANTS had promised her. Someone in PLAINTIFF's position, having attained a partnership position at a leading agency, would not "gamble" her professional future on the passing whims of DEFENDANTS. PLAINTIFF relied on DEFENDANTS to follow through on their commitments.

17.     Adding insult to injury, PUBLICIS and FALLON had no qualms about treating its male executives in a qualitatively different manner than PLAINTIFF. For example, PLAINTIFF recommended that FALLON publicize its LA launch. BUCHNER said no. Yet, when the male-led team launched the New York office, resources were poured in to make the launch a splash, resulting in coverage in trade press, including AdWeek, the Drum, etc. Moreover, the New York office pursued new hires almost immediately, while PLAINTIFF was never permitted to hire.

18.     This was on par with other indicia of an environment dismissive of women, particularly in leadership positions.  At one point, PLAINTIFF asked about the availability of funds earmarked for "creative" talent to assist in her hiring needs.  She was told that, although those funds were technically available, she would be "a very unpopular person" with male executives if she pushed the issue.

19.     FALLON's code of conduct advises employees that the "cool person is always the one willing to admit they were a douche."  To aid its decision of prioritizing its New York launch over its commitments to PLAINTIFF and establishing an LA presence, FALLON opted to spend its resources on having artist Mark Mulroney (aka Sam Norelli) create renderings of its NY leadership.  Mr. Mulroney is known for his baseball card renderings, including those entitled:

Philadelphia Pussy Eaters

Boston Rimjobbers

Shaved Pussy

The Pussycoats

(See Exhibit A hereto.)

**PUBLICIS AND FALLON RETALIATE AFTER PLAINTIFF RAISES DISCRIMINATION**

20.     On March 3, 2017, when DEFENDANTS advised PLAINTIFF that she was being fired, she was told her last day would be April 3, 2017.  She would be permitted to use that time to transition matters appropriately and to communicate with third parties in the market in a manner that would soften the blow to her reputation.

21.     On March 14, 2017, PLAINTIFF's attorney sent a letter to Karen Rogers, FALLON's head of human resources.  The letter put PUBLICIS and FALLON on notice of, among other things, PLAINTIFF's claim of gender discrimination.

22.     Within 48 hours of having received the letter from PLAINTIFF's attorney, PUBLICIS and FALLON did an about-face and cut off PLAINTIFF's access to FALLON systems, including her company email account and demanded the immediate return of her FALLON computer.

CASE NO: CV 1—5526-JFW (Ex)                    FIRST AMENDED COMPLAINT

23.     PUBLICIS and FALLON also refused to pay PLAINTIFF her unused vacation or her annual bonus at the time of termination.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

### (AGAINST DEFENDANTS PUBLICIS AND FALLON)

24.     PLAINTIFF incorporates by reference paragraphs 1 - 23 above as though set forth in full.

25.     In or around March of 2016, PLAINTIFF and FALLON entered into a contract for employment.  Pursuant to the contract, with PUBLICIS' approval FALLON hired PLAINTIFF to launch its Los Angeles office.  PUBLICIS and FALLON promised PLAINTIFF as part of the contract that it would permit her to hire the necessary team and provide other necessary resources to make the office a success.  PUBLICIS and FALLON also promised PLAINTIFF as part of the contract that it would allow her at least two years to build the Los Angeles office into a success. PUBLICIS and FALLON are an integrated enterprise.

26.     PLAINTIFF performed all of her obligations under the contract.

27.     PUBLICIS and FALLON breached the contract by refusing to allow PLAINTIFF to hire anyone for the Los Angeles office, failing to provide other resources and by failing to provide at least two years for the Los Angeles office to develop.

28.     PUBLICIS' and FALLON's failure to perform its contractual obligations was not excused.

29.     PUBLICIS' and FALLON's breach has caused PLAINTIFF damages, including lost compensation and benefits and damage to her professional reputation, all in amount to be proven at trial.

## SECOND CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

### (AGAINST DEFENDANTS PUBLICIS AND FALLON)

CASE NO: CV 1—5526-JFW (Ex)                    FIRST AMENDED COMPLAINT

30.     PLAINTIFF incorporates by reference paragraphs 1 - 29 above as though set forth in full.

31.     In or around March of 2016, PLAINTIFF and FALLON entered into a contract for employment, with PUBLICIS' approval.  In every contract entered into in the State of California there is an implied covenant of good faith and fair dealing.  Pursuant to this covenant, PUBLICIS and FALLON had an obligation to provide PLAINTIFF with the reasonable resources necessary to achieve the result she was hired to achieve, i.e., the launch of a Los Angeles office and to make it a success within two years.

32.     PLAINTIFF performed all of her obligations under the contract.

33.     PUBLICIS and FALLON breached the covenant of good faith and fair dealing by refusing to allow PLAINTIFF to hire anyone for the Los Angeles office, failing to provide other resources and by failing to provide at least two years for the Los Angeles office to develop.

34.     PUBLICIS and FALLON further breached the covenant by terminating PLAINTIFF's employment eight days prior to her one-year employment anniversary to avoid paying her an annual bonus.

35.     PUBLICIS and FALLON's failure to perform was not excused.

36.     PUBLICIS and FALLON's breach has caused PLAINTIFF damages, including lost compensation and benefits and damage to her professional reputation, all in amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**FRAUD & DECEIT**

**(AGAINST ALL DEFENDANTS)**

37.     PLAINTIFF incorporates by reference paragraphs 1 - 36 above as though set forth in full.

38.     As alleged hereinabove, in or around February and March of 2016, DEFENDANTS induced PLAINTIFF to withdraw from her partnership at the Ogilvy firm and forgo her promising future there in order to come to work for FALLON.  As part of their efforts to induce PLAINTIFF to do so, they represented repeatedly that PLAINTIFF would be able to hire the necessary team and

provide other necessary resources to make the office a success. Indeed, DEFENDANTS repeatedly represented to PLAINTIFF that they were counting on her to do so. DEFENDANTS also represented to PLAINTIFF that she would be given at least two years to build the Los Angeles office into a success. BUCHNER made these misrepresentations to PLAINTIFF, in part, in person in Los Angeles when he flew out to meet her. In addition, BUCHNER's misrepresentations all were made to PLAINTIFF while she was in Los Angeles and were intended to induce her to act in Los Angeles, i.e., to quit her job at the Ogilvy firm and accept Los Angeles-based employment with FALLON.

39.     These representations by DEFENDANTS were false and they knew they were false when they made them to PLAINTIFF. In truth, DEFENDANTS knew that a hiring freeze was already in place or about to be put in place that would prevent PLAINTIFF from making the necessary hires for the Los Angeles office. Similarly, DEFENDANTS knew at the time of such representations that because PLAINTIFF would not, in fact, be able to make the necessary hires, it was highly questionable whether DEFENDANTS would, in fact, allow PLAINTIFF two years to build a successful office. In fact, DEFENDANTS believed the Los Angeles office to be, in the words of BUCHNER, simply a "gamble." If it worked out, great. If it did not, they would simply cast PLAINTIFF aside.

40.     DEFENDANTS intended PLAINTIFF to rely on their representations by, among other things, leaving her secure employment at Ogilvy.

41.     PLAINTIFF relied to her detriment on the representations made by DEFENDANTS in resigning her partnership position at Ogilvy to go to work for FALLON. In so doing, she walked away from a lucrative compensation package and the stability and security of a partnership at an internationally recognized agency.

42.     The misrepresentations by DEFENDANTS have caused PLAINTIFF damages, including, lost compensation and benefits, damage to her professional reputation, and emotional distress and humiliation.

43.     DEFENDANTS' conduct was engaged in with malice, oppression and/or fraud and by and with the knowledge of BUCHNER, the Chief Executive Officer of FALLON.  Accordingly, punitive damages are warranted.

## FOURTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

### (AGAINST ALL DEFENDANTS)

44.     PLAINTIFF incorporates by reference paragraphs 1 - 43 above as though set forth in full.

45.     In making the representations alleged hereinabove, DEFENDANTS were negligent and/or reckless as to whether in fact PLAINTIFF would, in fact, be able to hire the necessary team and provide other necessary resources to make the office a success and/or that PLAINTIFF would be given at least two years to build the Los Angeles office into a success.

46.     DEFENDANTS intended PLAINTIFF to rely on their representations by, among other things, leaving her secure employment at Ogilvy.

47.     PLAINTIFF relied to her detriment on the representations made by DEFENDANTS in resigning her partnership position at Ogilvy to go to work for FALLON.  In so doing, she walked away from a lucrative compensation package and the stability and security of a partnership at an internationally recognized agency.

48.     The misrepresentations by DEFENDANTS have caused PLAINTIFF damages, including, lost compensation and benefits, damage to her professional reputation, and emotional distress and humiliation.

## FIFTH CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### (AGAINST DEFENDANTS PUBLICIS AND FALLON)

49.     PLAINTIFF incorporates by reference paragraphs 1 - 46 above as though set forth in full.

CASE NO: CV 1—5526-JFW (Ex)                FIRST AMENDED COMPLAINT

50.     There is in the State of California a fundamental public policy prohibiting the discrimination against employees on the basis of gender and the retaliation against employees for engaging in the protected activity of raising a claim of gender discrimination.  This fundamental public policy is set forth in, among other places, the state's Fair Employment & Housing Act statute, which expressly prohibits discrimination based on gender.

51.     As alleged herein above, PLAINTIFF was discriminated against by PUBLICIS and FALLON on the basis of gender.  The discrimination led to and included the termination of her employment.

52.     FALLON's wrongful termination in violation of public policy has caused PLAINTIFF damages in the form of lost compensation and benefits as well as emotional distress and humiliation.

53.     PUBLICIS' and FALLONs' conduct was engaged in with malice, oppression and/or fraud and by and with the knowledge of BUCHNER, the Chief Executive Officer of FALLON. Accordingly, punitive damages are warranted.

**SIXTH CAUSE OF ACTION**

**FAILURE TO PAY WAGES**

**(AGAINST DEFENDANTS PUBLICIS AND FALLON)**

54.     PLAINTIFF incorporates by reference paragraphs 1 - 50 above as though set forth in full.

55.     PLAINTIFF was promised that she would be eligible for an annual bonus based on FALLON's performance and her individual contribution.

56.     PUBLICIS and FALLON terminated PLAINTIFF's employment eight days prior to her having been employed at FALLON for one-year.  PLAINTIFF had performed very well during that period.  On information and belief, other FALLON executives received or will receive annual bonuses based on the same period of employment.

57.     PUBLICIS and FALLON have not paid PLAINTIFF her annual bonus.

58.     PUBLICIS and FALLON also promised PLAINTIFF that she would "receive four weeks vacation and up to 12 sick days each calendar year."  Accordingly, PLAINTIFF had eight

weeks of paid vacation (four weeks upon her hire for the year 2016 and four weeks for the year 2017).  PLAINTIFF took only four days of vacation during her entire employment at FALLON.

59.      PUBLICIS and FALLON's failure to pay PLAINTIFF her annual bonus and her accrued but unused vacation constitutes a violation of California Labor Code section 201.

60.      PUBLICIS and FALLON are required to pay PLAINTIFF the amount of her annual bonus (to be proven at trial) and the amount of $46,411.00 in unused vacation.

61.      PLAINTIFF is also entitled to recover her attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION

### WAITING TIME PENALTY

### (AGAINST DEFENDANTS PUBLICIS AND FALLON)

62.      PLAINTIFF incorporates by reference paragraphs 1 - 59 above as though set forth in full.

63.      PUBLICIS' and FALLON's failure to pay PLAINTIFF her annual bonus and unused vacation at the time of termination entitles PLAINTIFF to a waiting time penalty under California Labor Code section 203.  The amount of the penalty is equal to one days' wages for every day payment is not made following termination up to thirty days' wages, i.e., $38,653.84.

64.      PLAINTIFF is also entitled to recover her attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION

### GENDER DISCRIMINATION (CAL. GOVT CODE §12900 ET SEQ)

### (AGAINST DEFENDANTS PUBLICIS and FALLON)

65.      PLAINTIFF incorporates by reference paragraphs 1-64 above as though set forth in full.

66.      PLAINTIFF filed a complaint with the California Department of Fair Employment and Housing alleging gender discrimination and retaliation and has received an immediate right to sue notice.

67.      FALLON was PLAINTIFF's employer within the meaning of California Government Code section 12940(a).  PUBLICIS is also PLAINTIFF's employer within the

meaning of Government Code section 12940(a) because PUBLICIS and FALLON are an integrated enterprise.

68.     PUBLICIS and FALLON terminated PLAINTIFF's employment.

69.     PLAINTIFF's gender was a substantial motivating reason for PUBLICIS' and FALLON's decision to terminate PLAINTIFF's employment.  PUBLICIS' and FALLON's proffered explanation for its decision is a pretext for discrimination.

70.     As a result of PUBLICIS' and FALLON's conduct, PLAINTIFF was harmed and has suffered damages in the form of lost compensation and benefits as well as emotional distress and humiliation.

71.     PUBLICIS' and FALLON's conduct was engaged in with malice, oppression and/or fraud and by and with the knowledge of BUCHNER, the Chief Executive Officer of FALLON. Accordingly, punitive damages are warranted.

## NINTH CAUSE OF ACTION

### RETALIATION (CAL. GOVT CODE § 12900 ET SEQ)

### (AGAINST DEFENDANTS PUBLICIS and FALLON)

72.     PLAINTIFF incorporates by references paragraphs 1-69 as though set forth in full.

73.     FALLON was PLAINTIFF's employer within the meaning of California Government Code section 12940.  PUBLICIS is also PLAINTIFF's employer within the meaning of Government Code section 12940(a) because PUBLICIS and FALLON are an integrated enterprise.

74.     PLAINTIFF engaged in protected activity by complaining via letter from her attorney to FALLON's human resources department that FALLON had engaged in gender discrimination and other wrongful conduct against her.

75.     Within 48 hours, PUBLICIS and FALLON retaliated against her by, inter alia, immediately cutting off PLAINTIFF's ability to effectively transition her FALLON matters and communicate with third parties in the market in a manner that would soften the blow to her reputation from FALLON's abrupt termination of her employment. FALLON also refused to pay PLAINTIFF her unused vacation or her annual bonus at the time of termination.

76.     PLAINTIFF's complaint to human resources was a substantial motivating reason for PUBLICIS' and FALLON's retaliatory conduct.

77.     As a result of PUBLICIS' and FALLON's conduct, PLAINTIFF was harmed and has suffered damages in the form of lost compensation and benefits as well as emotional distress and humiliation.

78.     PUBLICIS' and FALLON's conduct was engaged in with malice, oppression and/or fraud and by and with the knowledge of BUCHNER, the Chief Executive Officer of FALLON. Accordingly, punitive damages are warranted.

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF hereby prays for judgment against DEFENDANTS on all causes of action and for recovery as follows:

1.  Pursuant to the First Cause of Action:
    a.  Economic damages for past lost wages and benefits and future lost wages and benefits in an amount to be proven at trial;
    b.  Damages for injury to reputation in an amount to be proven at trial; and
    c.  For such other relief as the Court may deem just and proper.

2.  Pursuant to the Second Cause of Action:
    a.  Economic damages for past lost wages and benefits and future lost wages and benefits in an amount to be proven at trial;
    b.  Damages for injury to reputation in an amount to be proven at trial; and
    c.  For such other relief as the Court may deem just and proper.

3.  Pursuant to the Third Cause of Action:
    a.  Economic damages for past lost wages and benefits and future lost wages and benefits in an amount to be proven at trial;
    b.  Damages for emotional distress and humiliation in an amount to be proven at trial;
    c.  Punitive damages in an amount to be proven at trial; and
    d.  For such other relief as the Court may deem just and proper.

4.  Pursuant to the Fourth Cause of Action:

CASE NO: CV 1—5526-JFW (Ex)                    FIRST AMENDED COMPLAINT

        a.  Economic damages for past lost wages and benefits and future lost wages and benefits in an amount to be proven at trial;

        b.  Damages for emotional distress and humiliation in an amount to be proven at trial; and

        c.  For such other relief as the Court may deem just and proper.

5.  Pursuant to the Fifth Cause of Action:

        a.  Economic damages for past lost wages and benefits and future lost wages and benefits in an amount to be proven at trial;

        b.  Damages for emotional distress and humiliation in an amount to be proven at trial;

        c.  Punitive damages in an amount to be proven at trial; and

        d.  For such other relief as the Court may deem just and proper.

6.  Pursuant to the Sixth Cause of Action:

        a.  Payment of PLAINTIFF's annual bonus in an amount to be proven at trial;

        b.  Payment in the amount of $46,411.00 in unused vacation;

        c.  Attorneys' fees and costs pursuant to statute;

        d.  Prejudgment interest; and

        e.  For such other relief as the Court may deem just and proper.

7.  Pursuant to the Seventh Cause of Action:

        a.  Payment of a waiting time penalty in the amount of $38,653.84;

        b.  Prejudgment interest;

        c.  Attorneys' fees and costs pursuant to statute; and

        d.  For such other relief as the Court may deem just and proper.

8.  Pursuant to the Eighth Cause of Action:

        a.  Economic damages for past lost wages and benefits and future lost wages and benefits in an amount to be proven at trial;

        b.  Damages for emotional distress and humiliation in an amount to be proven at trial;

        c.  Prejudgment interest;

        d.  Attorneys' fees and costs pursuant to statute;

CASE NO: CV 1—5526-JFW (Ex)        FIRST AMENDED COMPLAINT

e.   Punitive damages in an amount to be proven at trial; and

f.   For such other relief as the Court may deem just and proper

9.   Pursuant to the Ninth Cause of Action:

a.   Economic damages for past lost wages and benefits and future lost wages and benefits in an amount to be proven at trial;

b.   Damages for emotional distress and humiliation in an amount to be proven at trial;

c.   Prejudgment interest;

d.   Attorneys' fees and costs pursuant to statute;

e.   Punitive damages in an amount to be proven at trial; and

f.   For such other relief as the Court may deem just and proper.

10.  As to all causes of action, costs and prejudgment interest pursuant to statute and for such other relief as the Court may deem just and proper.

Dated: January __, 2018

RAFKIN ESQ., PLLC

By: _Seth R_____

Seth A. Rafkin (199166)

Attorneys for PLAINTIFF Mandana Mellano

CASE NO: CV 1—5526-JFW (Ex)                        FIRST AMENDED COMPLAINT

1

**JURY DEMAND**

2        Plaintiff hereby demands trial by jury as to any and all claims for relief, causes of action

3 and counts subject to trial by jury.

4 Dated: November __, 2017              RAFKIN ESQ., PLLC

5

6                                 By: _____

7                                      Seth A. Rafkin (199166)

8                                      Attorneys for PLAINTIFF Mandana
                                       Mellano
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO: CV 1—5526-JFW (Ex)                    FIRST AMENDED COMPLAINT